## PEOPLE v PACE

Docket No. 78-4073. Submitted May 7, 1980, at Detroit.—Decided July 22, 1980.

Larell Pace was convicted of third-degree criminal sexual conduct in Detroit Recorder's Court, Justin C. Ravitz, J. The defendant appeals, alleging that: (1) the prosecution failed to demonstrate due diligence in its attempts to produce the physician who examined the complaining witness; (2) the statement he gave to the police shortly after he was taken into custody was involuntary; (3) the prosecuting attorney's cross-examination of the defendant's brother concerning whether the brother had used an alias constituted error, and (4) he was denied effective assistance of counsel. *Held:*

1. There was no due diligence by the prosecutor to locate the physician. However, the defense was one of consent. The doctor's report indicated that evidence of intercourse was found upon examination of the victim and the complaining witness testified that the defendant struck her but that no bruises resulted from the blows. The error was harmless.

2. The inculpatory statement made by the defendant after being taken into custody was not involuntary. The defendant was given the *Miranda* warnings prior to making the statement, and even though the defendant believed he was speaking with an attorney's investigator rather than a police officer, his confession was self-induced.

3. A witness's use of an alias is highly probative of his credibility and where inquiries as to such use are not emphasized in an attempt to discredit the witness through innuendo they do not constitute error.

4. The defendant was afforded representation that meets the standard for effective assistance of counsel.

Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 808.

[2] 29 Am Jur 2d, Evidence §§ 555-557.

Necessity of informing suspect of rights under privilege of self-incrimination prior to police interrogation. 10 ALR3d 1054.

[3] 81 Am Jur 2d, Witnesses § 529.

1. CRIMINAL LAW — WITNESSES — PROSECUTING ATTORNEYS — DUE
   DILIGENCE — HARMLESS ERROR.

Failure to produce the physician who examined the victim in a
criminal sexual conduct case was harmless error where there
was no due diligence to locate him but where the defense was
one of consent and the doctor's report indicated that evidence
of intercourse was found upon examining the victim and the
complaining witness testified that the defendant struck her but
that no bruises resulted from the blows.

2. CRIMINAL LAW — INCULPATORY STATEMENTS — INVOLUNTARY
   STATEMENTS — CONSTITUTIONAL LAW.

An inculpatory statement made by a defendant after being taken
into custody will not be considered involuntary where the
defendant was given the *Miranda* warnings prior to making the
statement, even though the defendant believed he was speaking
with an attorney's investigator rather than a police officer
when making the statement where the defendant's confession
was self-induced.

3. WITNESSES — ALIASES — CREDIBILITY — INQUIRIES — HARMLESS
   ERROR.

A witness's use of an alias is highly probative of his credibility
and where inquiries as to such use are not emphasized in an
attempt to discredit the witness through innuendo they do not
constitute error.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Rita Chastang,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: BEASLEY, P.J., and M. F. CAVANAGH and W. A. PORTER,* JJ.

M. F. CAVANAGH, J. Defendant was convicted by a jury of third-degree criminal sexual conduct, MCL 750.520(d); MSA 28.788(4), and was sentenced

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to a term in prison from 3-1/2 to 15 years. He claims this appeal by right.

Defendant first contends that the prosecution failed to demonstrate due diligence in its unsuccessful attempts to produce an endorsed res gestae witness, the examining physician. The trial court found, at the motion hearing for a new trial, that there was no absence of due diligence, that the jury was given a due diligence instruction, and that the absence of the witness was not prejudicial to the defendant. The complaining witness was examined by the physician on September 20, 1977. The physician left the hospital at which he worked on November 30, 1977, and returned to his native country, Turkey, on December 8, 1977. Police efforts to produce the physician included a telephone call to the hospital where he worked "early in December, 1977", at which time it was learned that "the doctor was to return to Turkey", and one other telephone call to immigration authorities on January 24, 1978, which established that the doctor had left the country on December 8, 1977. Additionally, the physician's office was called and his telephone was found to have been disconnected, but no date was given for that call. Sometime after the trial began on February 14, 1978, the jury was told that the doctor had left the country due to his expired visa, but they were instructed that, if this explanation was not satisfactory to excuse his nonproduction as a trial witness, they could infer that his testimony would have been unfavorable to the prosecution.

These efforts on behalf of the prosecution to produce the doctor at trial do not convince us that due diligence was shown. For instance, at the in-trial hearing on this matter, the prosecutor indicated that he had been aware of the doctor's

impending departure and had preserved testimony by deposition for a different case, although he was unaware of the doctor's involvement in the present case. Also, the police officer's testimony suggests that after the telephone call in early December, it was still possible that the doctor was in the area, yet no further attempt was made to locate him until late January. *People v Willie Pearson,* 404 Mich 698, 716-717; 273 NW2d 856 (1979).

Despite the lack of due diligence, however, we find that this failure constitutes harmless error. Defendant's defense was one of consent. The trial judge requested that the prosecution subpoena the doctor's report on the examination of the complaining witness so that it could be reviewed at the hearing on the motion for a new trial. That report was read into the record at the hearing, and it indicated that evidence of intercourse was found. The complaining witness testified that defendant threatened her repeatedly and that he struck her but that no bruises resulted from the blows. Given these circumstances, we affirm the finding of the trial court that no reversible error occurred through the nonproduction of the doctor. *Pearson, supra,* 725.

Next, defendant argues that his statement given to the police shortly after being taken into custody and after he was given the *Miranda*[1] warnings was involuntary because he thought he was speaking to an investigator for an attorney. The statement was inculpatory to the extent that defendant admitted meeting the complainant on the night in question, driving around with her and eventually stopping on a side street where they discussed religion for about three hours. At that point, how-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

ever, defendant ceased talking and requested an attorney. A motion to suppress was made during trial at which time a separate hearing was conducted. The trial court ruled at the hearing on the motion for a new trial that the statement was given voluntarily. Defendant admitted that he had been given the *Miranda* warnings prior to speaking with the officer and that he had signed a copy thereof. He was unable to explain how he became aware that the perceived investigator was actually a police officer. None of the practices condemned with regard to taking defendant's statements in *People v Brannan,* 406 Mich 104; 276 NW2d 14 (1979), are evident here. It appears that defendant's alleged confusion was self-induced and, thus, we affirm the ruling of the trial court on this issue.

Defendant also takes issue with certain cross-examination of the defendant's brother where the prosecutor asked him whether he had ever used an alias in general or two different, specific names. These questions were not objected to at trial, but were mentioned in defendant's motion for a new trial. In ruling upon this argument, the trial court stated that such inquiries could become a problem where they are replete throughout the record, but one isolated instance as this was not a problem. This Court has stated that a witness's use of an alias is highly probative of his or her credibility. *People v Dietrich,* 87 Mich App 116, 139; 274 NW2d 472 (1978). Where, as here, the inquiries are not emphasized in an attempt to discredit a witness through innuendo, especially when the witness was the defendant's brother, they do not constitute error.

Defendant's final contention is that he was denied effective assistance of counsel by virtue of two

mistakes committed by his trial counsel. They were that no pretrial motion to suppress defendant's statement was made, and, that defense counsel through his questioning allowed the jury to become aware of the fact that defendant had curtailed his statement by invoking his Fifth Amendment privilege. Concerning the first mistake, defense counsel did instigate a hearing on the voluntariness of defendant's statement, albeit at trial, and it was found to be admissible. Our above review of that determination makes it clear that the statement was not obtained illegally, and thus, it is clear that a failure to litigate the issue prior to trial had little effect upon defendant's conviction. *People v Degraffenreid,* 19 Mich App 702, 714-715; 173 NW2d 317 (1969). Defendant had terminated his statement to the police in mid-sentence as he was saying, "We sat there for three hours talking about religion * * *." After ruling that the statement was admissible, the trial court cautioned counsel not to mention defendant's assertion of his right to an attorney. Nevertheless, defense counsel questioned the officer as to the completeness of the statement and as to the fact that the last sentence ended with a comma. This was deemed to have opened the door to the prosecution's inquiry as to why the statement was incomplete. The jury was instructed that defendant's assertion of the privilege was not to be taken in a prejudicial manner. Defense counsel, in support of his theory of consent, elicited from the complainant the admission that she and defendant had discussed sex. By demonstrating that defendant's statement was incomplete he was able to bolster this theory by indirectly adding to defendant's statement the fact that they had also discussed sex. A failure to show the statement's incompleteness may have negated that contention.

This appears to be a conscious choice of trial strategy and we find that defendant was afforded representation that meets the standard adopted in *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976).

Affirmed.