STATE OF HAWAII, Plaintiff-Appellee, *v.* DANA BORGES RAPOZO, Defendant-Appellant

NO. 7815

CRIMINAL NO. 52109

DECEMBER 16, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Appellant Dana Borges Rapozo appeals his conviction[1] of the murder of Gary Borges, in violation of Hawaii Revised Statutes (HRS) § 707-701 (1976). We affirm.

Two issues are decided in this appeal:

1. Whether the trial court abused its discretion in denying appellant's motion for a mistrial made after a witness for the State testified to occurrences which he had not revealed in his written statement to the police. The written statement had been

---

[1] The three-day jury trial commenced on January 21, 1980.

given to appellant's counsel pursuant to pretrial discovery procedures conducted under Rule 16, Hawaii Rules of Penal Procedure (HRPP). We answer no.

2. Whether a sufficient foundation was laid of a conspiracy between appellant and his brother to commit murder so as to allow the State's witness' testimony about the statements made by appellant's brother to be used against appellant. We answer yes.

On October 9, 1978, Gary Borges was shot and killed in his Waimanalo home. The fatal bullet was fired from a .38-caliber revolver; there were also non-fatal shotgun wounds on the body.

Kirk Johnson, a relative of the victim, testified that he was at the Borges' home riding ponies on the day of the murder; that Borges was away working on Maui but was expected home later that evening; that appellant came up to the home and asked Johnson when Borges was coming back; and that Johnson told appellant that Borges would be home later that evening.

The victim's live-in female friend testified that Borges returned from Maui on the afternoon of October 9; that they went to bed around nine-thirty that night but were awakened later by a knocking at their door; that Borges got up to answer it; that she heard Borges talking to someone, then shots fired one after another; that she heard Borges say, "No Dana, no," and then heard Borges hitting the walls in the hallway; that she got up from the bed but fell to the floor when two more shots were fired through the bedroom window; that she crawled to the bathroom and found Borges lying facedown on the floor bleeding from the head and chest.

When the first police officer arrived on the scene at around 10:45 p.m., Borges was still alive. The officer testified that Borges said to him, "Help me. I can't see, I'm dying," then, "I'm dying. Dana shot me." The officer asked, "Dana who?" Borges replied, "Dana Rapozo."

Stray bullets recovered at the Borges' home and from the body of the victim were all fired from the same .38-caliber revolver. Two shotgun cartridges were found outside the home and were determined to have been fired from the same twelve-gage shotgun.

Kenneth Harbottle, a key witness for the prosecution, testified that he had been with appellant and appellant's brother Allan Rapozo throughout the afternoon and evening of October 9; that at around eight o'clock that evening, he saw appellant take out a

handgun, aim it at "Park's" house and put it away without firing it; that later Allan and appellant were drinking beer with him at the Waimanalo gym; that Allan left and came back to the gym with a shotgun; that Harbottle saw him load the gun;[2] that appellant was armed with the same handgun Harbottle had seen him with earlier; that "they[3] say they was gonna shoot Gary. . . . And I asked them not for do it, but they said he's going to rat on another brother. . . . So they had to do it.[4]" (Footnotes added.) The prosecutor elicited the following testimony from Harbottle:

Q. Now, did they say anything about how this was to occur, how they were going to do the shooting?

A. That somebody was going down the door, knock.

Q. Who was going to the door to knock?

A. Dana.

Q. And what was he going to do after he knocked?

A. Shoot Gary and then Allan was gonna shoot through the window in case Gary run back to his room.

Harbottle further testified that appellant asked him to get a bottle of vinegar so appellant and Allan could wipe the gun powder off their hands after the shooting. Harbottle said that when he left the gym, he saw appellant and Allan walking toward the Borges' home carrying the guns.

Harbottle testified that later that night, at around eleven o'clock, appellant and Allan came to his house; that "[they] [s]aid that they shot Gary. . . . Both of them was telling me that"; that "Dana said that he shot him, you know, forceful, and chased him in the house & started shooting in the hallway"; that "they" asked him to see if Borges was dead; that he went to the Borges' home, and when he returned and reported that Borges had been taken to the hospital, appellant "[s]aid he hope Gary die because Gary saw him clear"; that

[2] An unfired fully loaded twelve-gage shotgun cartridge was recovered the next day from the gym area.

[3] There was no clarification in much of Harbottle's testimony as to exactly who said what, so it is unclear whether appellant, Allan, or both made the statements. Defense counsel made no objection to this form of testimony.

[4] Richard Rapozo had been implicated in the murder of Robert T. K. Lee. Borges had given a statement to the police incriminating Richard.

appellant and Allan spent the night at Harbottle's house and left the next morning; that Allan threatened to shoot Harbottle if he said anything.

The defense called no witnesses and introduced no evidence.

Appellant first contends that the lower court erred in denying his motion for mistrial, which he made when he heard testimony that led him to believe that the prosecutor had failed to satisfy his disclosure obligation under Rule 16, HRPP, and under the agreement between the parties. We disagree.

The relevant portions of Rule 16, HRPP, provide:

Rule 16. DISCOVERY.

\* \* \*

(b) Disclosure by the Prosecution.

(1) *Disclosure Upon Written Request of Matters Within Prosecution's Possession.* Upon written request of defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:

(i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses, in the presentation of the evidence in chief, together with their relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;

(ii) any written or recorded statements and the substance of any oral statements made by the defendant, or made by a co-defendant if intended to be used in a joint trial, together with the names and last known addresses of persons who witnessed the making of such statements;

\* \* \*

(4) The term "statement" as used in subsect[i]on (b)(1)(i) and (c)(2)(i) of this rule means:

(i) a written statement made by the witness and signed or otherwise adopted or approved by him; or

(ii) A stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the

witness and recorded contemporaneously with the making of such oral statement.

\* \* \*

On January 8, 1979, the prosecutor agreed to "expediciously [sic] disclose to Counsel for the Defendant the material and information the Defendant is entitled to under Rule 16 of the Hawaii Rules of Civil Procedure [sic]." In compliance with his agreement to comply with Rule 16, the prosecutor provided defendant's counsel[5] with a copy of a written statement which Harbottle gave to the police on October 11, 1978.

Although a copy of the written statement is not part of the record, it appears that Harbottle had not mentioned the following matters in his prior written statement: That appellant and Allan said they intended to shoot Borges because "he's going to rat on another brother"; that appellant pointed the gun toward Park's house; that appellant and Allan made inculpatory statements while at the Waimanalo gym area; and that appellant and Allan made inculpatory statements after Borges was shot.

In this situation, we do not reach the Rule 16(b)(1) disclosure issue[6] because defense counsel failed to establish when, prior to the testimony at trial, if ever, the State had been informed that Harbottle would testify to something different or more than he had revealed in his October 11, 1978, written statement.

Further, as did the appellant in *State v. Sugimoto*, 62 Haw. 259, 614 P.2d 386 (1980), appellant in this case did not provide any basis

---

[5] On November 26, 1979, the lower court granted defense counsel's motion to withdraw and immediately thereafter new counsel was appointed.

[6] Under Rule 16(b)(1)(i), Harbottle's pre-testimony statement, if any, about the pointing of the gun toward Park's house did not have to be disclosed by the prosecutor if it was not a written or recorded statement or if it was an oral statement recorded by the prosecutor.

Under Rule 16(b)(1)(ii), the prosecutor is required to disclose to the defense counsel, *inter alia*, "the substance of any oral statements made by the defendant." Obviously, oral statements made directly by the defendant must be disclosed. It is not so clear whether statements made by witnesses which are not required to be disclosed under Rule 16(b)(1)(i) must be disclosed under Rule 16(b)((1)(ii) insofar as they relate to the substance of oral statements which the witness attributes to the defendant.

or justification for his motion other than the violation of Rule 16,[7] and he moved only for a mistrial. In such circumstances, like the Hawaii Supreme Court in the *Sugimoto* case, we hold that the lower court did not abuse its discretion in denying appellant's motion for a mistrial.[8]

Second, appellant contends that it was error to allow Harbottle to testify about the out-of-court statements which Allan Rapozo uttered in Harbottle's presence. The State contends that Allan's statements were admissible under existing case law[9] as statements of a co-conspirator. We agree with the State.

In *State v. Yoshino*, 45 Haw. 206, 364 P.2d 638 (1961), the Hawaii Supreme Court described the co-conspirator exception as follows:

Where it appears that one or more persons have conspired to commit an offense, evidence of acts and declarations done or made in furtherance of the common purpose during the existence of the conspiracy, though subsequent to the offense charged, is admissible against all of the conspirators. *Territory v. Goto*, 27 Haw. 65; *Territory v. Kitabayashi*, 41 Haw. 428. Before the acts or declarations of the one conspirator against the other are admissible a foundation must be laid by proving the existence of the conspiracy and the accused's connection therewith, but the conspiracy need not be established by direct evidence. Proof of

---

[7] The alleged but unproven prosecutorial misconduct did not constitute a presumptively prejudicial violation of a constitutional right such as is referred to in *State v. Yoshino*, 45 Haw. 206, 218, 364 P.2d 638, 645 (1961).

[8] Rule 16. DISCOVERY.

    \*    \*    \*

(e) Regulation of Discovery.

    \*    \*    \*

(8) *Sanctions.*

    (i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

    \*    \*    \*

[9] The Hawaii Rules of Evidence were not in effect at the time of the trial. Effective January 1, 1981, the statements of a co-conspirator are admissible under Rule 803(a)(2)(c).

circumstances from which its existence may fairly be inferred is sufficient to let in evidence of the acts and declarations of one conspirator against another. *Territory v. Goto, supra.*

*Id.* at 214-215.

Although appellant cites cases which require proof of the conspiracy before the statements are admitted, this is not the rule in Hawaii:

> Neither is it required that the conspiracy be established before receiving evidence of the acts and declarations of the members. With reference to the order of proof in conspiracy cases, quoting from *People v. Saunders,* 25 Mich. 119, in the *Goto* case, *supra,* this court said:
>
> "* * * There is no class of cases in which it is more important that the circuit judge should have a large discretion as to the order in which evidence should be received; and this discretion cannot be reviewed on error except in clear cases of abuse, * * *."

*Id.* at 415.

Although there is some question whether the hearsay evidence itself may be used to prove the existence of the conspiracy,[10] we are not compelled to answer it because, in this case, even disregarding Allan's statements, there is substantial proof of the existence of a conspiracy. Consequently, we find that there was sufficient foundation for the admission of the evidence.

As a subsidiary issue, appellant contends that the trial judge should have instructed the jury that if the jury did not find that a conspiracy existed from proof independent of Allan's hearsay statements beyond a reasonable doubt, it was to disregard. Allan's

---

[10] The decisions of the federal courts construing Federal Rule of Evidence 801(d)(2)(E) (*compare* Hawaii Rule of Evidence 803(a)(2)(c)), allowing the admission into evidence of the statements of a co-conspirator, disagree on this issue. While some circuits require proof independent of the statements sought to be admitted, (*see, e.g.,* the dictum in *U.S. v. Nixon,* 418 U.S. 683, 701 (1974), requiring "substantial, independent evidence of the conspiracy, at least enough to take the question to the jury"), at least two circuits allow the court to consider the hearsay statement itself. *See* 11 J. MOORE, FEDERAL PRACTICE § 801.50[6] (supplement 1980-81) and J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 104[05] (1980 and Supp.). This issue is on appeal to the United States Supreme Court in *Taylor v. U.S.,* United States Supreme Court docket number 81-820. 50 USLW (December 1, 1981).

statements from its consideration of appellant's guilt or innocence.[11] Since appellant requested no such instruction at trial, he cannot now assert this as error. *State v. Yoshida,* 45 Haw. 50, 361 P.2d 1032 (1961).

Appellant also contends that Harbottle should not have been permitted to testify about appellant's and Allan's statements concerning the motive for the murder — that Borges had to die because he was going to be a witness against Richard Rapozo — where the State could not prove that appellant knew that Borges was going to be a witness against Richard. Appellant appears to be arguing that the State was obligated to prove appellant's knowledge by something other than his own out-of-court statements. However, appellant cites no relevant authority, and we find his arguments without merit.

Affirmed.

*Mal Gillin* for defendant-appellant.

*Thomas M. Pico, Jr.,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

[11] The issue is whether the jury, rather than the trial judge, is to ultimately decide the admissibility of the evidence. *See* 11 J. MOORE, FEDERAL PRACTICE and J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE, *supra.*