STATE OF HAWAII, Plaintiff-Appellee, *v.* ALFRED I. CORPUZ, Defendant-Appellant and VIVENCIO P. BARUT, JR., ENELE G. SCANLAN and FELIX SCANLAN, also known as Felisi G. Scanlan, Defendants

NO. 8062

(CRIMINAL NO. 53171)

JUNE 23, 1982

BURNS, C.J., HEEN, J. AND CIRCUIT JUDGE KANBARA ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY HEEN, J.

Defendant appeals from the judgment and sentence of the court below based upon the jury's verdict that the defendant was guilty of the offenses of Robbery In The First Degree and Kidnapping. Affirmed.

## QUESTIONS PRESENTED

Defendant's appeal poses the following questions:

1. Whether it was reversible error for the trial court to allow, without objection by defense counsel, numerous references by the prosecuting attorney in her opening statement and by at least two of the government's witnesses to the ethnic background of the defendants.

2. Whether it was reversible error for the trial court to allow the prosecutor to cross-examine the defendant about his use of an alias.

3. Whether it was reversible error for the trial court to allow the State to introduce evidence of an oral statement allegedly made by defendant to a witness, which was not disclosed to defense counsel prior to trial as requested.

4. Whether it was reversible error for the trial court to instruct the jury, without objection from defense counsel, that the defendant had the burden of proof with respect to the defense of duress.

On the night of May 21 and the morning of May 22, 1979, defendant and Vivencio P. Barut, Jr., Enele G. Scanlan, and Felix Scanlan, his three companions accosted Brent Meyers who was asleep in his automobile on Sand Island. Meyers testified that one of the men was armed with a shotgun. After forcing Meyers out of his automobile, the defendants rummaged through the vehicle and its contents and were able to obtain approximately $4 in cash. Not being satisfied with that sum, they began to beat Meyers and demanded that he tell them where the rest of his money was. Meyers finally told the defendants that he had the rest of his money in a bank account.

The defendants thereupon forced Meyers to make out a check in the amount of $150. The defendants then left the area but returned a few minutes later demanding that Meyers tell them where they could go to cash the check. Upon learning that they would have to go to the bank to cash the check, the four took Meyers to a nearby junkyard where he spent the night under guard.

The next morning Meyers was forced to accompany the defendant and Felix Scanlan to the bank and to enter the bank with Scanlan. While inside, Meyers was able to get the assistance of the cashier in calling the police. At that time, Scanlan hurriedly left the bank and he and the defendant drove off. Shortly thereafter, the police arrived at the bank and in their company, Meyers returned to the Sand Island scene. As they were driving down Sand Island Road, Meyers identified two of the defendant's companions, who had been stopped by the police, as two of his assailants.

An indictment against defendant and his companions was returned by the Oahu Grand Jury. In the meantime, defendant had gone to Alaska. He testified he left shortly after the incident because his brother had found employment for him. From Alaska he went to California and returned in September, 1979. He was arrested on June 22, 1980.

At defendant's trial, the victim identified his assailants as being two Samoan and two Filipino males. He described one assailant as being Samoan, over 6 feet tall with short brown hair, and another as being Samoan with black bushy hair, shorter and stockier than the first person described. The other two assailants were described as being Filipino, one with long, straight, shoulder-length black hair; the second Filipino had shorter black hair and was a little taller. The person with the long black hair was also described as being muscular and having tattooed on his back a large butterfly with the initials B.J. The witness used these descriptions throughout his testimony in order to indicate the acts performed by each defendant individually during the course of the incident. In her opening statement, the prosecuting attorney used the same descriptions numerous times.

In the course of the trial, defendant took the witness stand to establish his defense of duress. In the course of her cross-examination, the prosecutor asked the defendant if he had ever gone by the name of Michael Salas. The defendant admitted that he had used that name when he had gone to the police station in June of

1980,[1] and that it was the first time he had ever done so. That testimony was allowed by the court over the objection of defense counsel. At the close of that testimony, defense counsel moved the court for a mistrial claiming that the testimony about the alias tainted his client in the eyes of the jury, indicating to the jury that his client had been arrested by the police and somehow had a police record. The motion for mistrial was denied.

In the course of the trial, one William Scanlan, who is the brother of Felix and Enele Scanlan, testified as a government witness. William testified that between 4:00-5:00 in the afternoon after the incident, the defendant returned to the junkyard. Over defense counsel's objection that the prosecutor had not provided him with a copy of any statement made by the defendant to William Scanlan, the witness was allowed to testify that the defendant had told him that they were trying to make some money that night but they got caught anyway.

At the conclusion of the evidence, the court instructed the jury on the defense of duress as follows:

Under our laws, it is a defense to a criminal charge that the defendant acted under duress.

The defendant is not guilty of the crimes charged, if he committed acts or engaged in conduct otherwise criminal, while acting under threats under the following circumstances:

1. That the defendant engaged in the conduct because be [sic] was coerced to do so by the use of, or a threat to use unlawful force against his person, and

2. A person of reasonable firmness in his situation would have been unable to resist.

If you find that the defendant acted as a result of duress as just explained, then it is your duty to find the defendant not guilty. The burden is on the defendant to prove this by a preponderance of the evidence.

---

[1] The record does not indicate whether defendant turned himself in voluntarily o· not. We can assume, however, that he did not do so, since it would be inconsistent fo him to surrender voluntarily and yet use an alias.

The record indicates that the instruction complained of was submitted as Defendant's Requested Instruction No. 4 and was modified by the court and as modified was given by agreement of the parties. The modification was the addition of the last sentence reading, "The burden is on the defendant to prove this by a preponderance of the evidence." Defense counsel made no objection to the modification prior to the reading and made no objection after the reading of the instructions to the jury.

## I.

Throughout her opening statement, and beginning with the following,

The man who had the shotgun, the first time that Brent saw them was a Samoan and I'll call him for the sake of clarity in my opening statement, the first Samoan. There was another Samoan involved and I'll call him a second Samoan. There were two Filipino males involved, one of whom Brent was to find out later had a tatoo [sic] on his back. I'll call him the Filipino with the tatoo and the other one will just be the Filipino. O.K.,

the prosecuting attorney made numerous references to the ethnic origin of all four of the participants in the alleged offense. In addition, the bank clerk who testified for the government concerning the incident at the bank referred to the victim and the person accompanying him as, "a haole guy and Samoan guy." Thereafter, in further examining the witness, the prosecutor also referred to the two men who had come into the bank as the Samoan guy and the haole guy. In cross-examination, defense counsel also referred to the ethnic makeup of the defendant and his companions.

The victim, Brent Meyers, described his assailants as set forth above. Later in his testimony he was able to refer to Felix and Enele Scanlan by name. However, he consistently referred to the defendant as the Filipino with the long hair.

None of the references to racial origin on the part of the prosecutor or the witnesses was objected to by defense counsel.

Defendant argues that the action of the trial court constitutes plain error which may be noticed by this court, although not brought to the attention of the trial court, under Rule 52(b) of the Hawaii

Rules of Penal Procedure (HRPP) (1977).[2]

The general rule is that a reviewing court will not consider issues not raised before the trial court. However, as stated in the rule, matters not brought to the attention of the court below may be considered and determined on appeal where defendant's substantial rights may have been affected because of plain error. *State v. Onishi,* 59 Haw. 384, 581 P.2d 763 (1978); *State v. Bunn,* 50 Haw. 351, 440 P.2d 528 (1968); *State v. Yoshida,* 45 Haw. 50, 361 P.2d 1032 (1961). Stated otherwise, the rule is not rigid and may be deviated from if deviation is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *State v. Bunn, supra.* The erroneous admission of evidence may constitute plain error if a fair trial of the accused was thereby impaired, or if it substantially prejudiced the accused. *State v. Cummings,* 49 Haw. 522, 528, 423 P.2d 438 (1967). Defendant contends that the conduct of the prosecuting attorney and the admission of the testimony of the witnesses were destructive of his fundamental right to a fair trial because the references to racial extraction appealed to the prejudices of the jury.

The State argues that even if it were error to allow the actions of the prosecutor and the witnesses, it was harmless error in the context of the entire record. We agree.

In a different context such references to race or ethnic background could be destructive of a defendant's right to a fair trial. In the case at bar, however, close examination of the record indicates that there was a justifiable basis in the peculiar facts of this case for the racial references and that, even if it were error to allow such references, it was harmless beyond a reasonable doubt.

Not every error at the trial court level, even though of constitutional proportions, requires the appellate court to reverse the judgment below. *Chapman v. California,* 386 U.S. 18 (1967). Some constitutional errors may be deemed harmless where they are unimportant and insignificant in the total setting of a particular case. *Chapman, supra,* at 22. The test in these instances is whether the reviewing court is able to conclude, from the record as a whole, that

---

[2] (b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Rule 52(b), HRPP (1977).

the error was harmless beyond a reasonable doubt. *State v. Pokini,* 57 Haw. 27, 30, 548 P.2d 1402 (1976).

The record does not support defendant's position. At the very outset of her opening statement, the prosecuting attorney clearly stated that the purpose for referring to the racial extraction of the participants in the alleged offense was merely for clarification. Nothing appears in the record that indicates any attempt by the prosecuting attorney to use the racial identification in any pejorative manner. The testimony of the bank teller also was only an indication that the two men who came into the bank were of different racial extractions. While the victim referred throughout his testimony to the "Filipino with the long hair," a close review of the record indicates that those references were to simplify the means of description and identification. It should also be pointed out that the record shows the defendant to have trimmed his hair shortly after the incident in question, and that his hair was short at the time of trial.

Defendant argues that the extraordinary degree of racial awareness and sensitivity among the people of Hawaii creates a high probability that the continual references to the racial extraction of the defendant and his companions proved to be prejudicial to the defendant. This court does not find that argument persuasive. Examination of the trial jury list indicates the jury to have consisted of persons of various racial extractions. It is well known in this jurisdiction that references to racial extraction for purposes of description are commonplace. Those members of the jury who have resided here for any length of time can be presumed to be familiar with that practice. There is nothing to indicate that any member of the jury had his or her prejudice aroused by the racial references.

II.

Defendant complains that over his objection the following questions and answers were allowed by the court:

MS. FUTA: Mr. Corpuz, have you ever gone by the name of Michael Salas?

MR. CORPUZ: Yes.

MS. FUTA: When?

MR. CORPUZ: When I went to the police station.

MS. FUTA: You told them that your name was Michael Salas?

MR. CORPUZ: Yes.

MS. FUTA: And when was this?

MR. CORPUZ: This year. I don't know when. I don't know what month.

MS. FUTA: What did you say?

MR. CORPUZ: I don't know what month.

MS. FUTA: This year?

MR. CORPUZ: Yes.

MS. FUTA: Was it June, 1980?

MR. CORPUZ: Uh-hum.

MS. FUTA: Is that the first time you've ever used that name?

MR. CORPUZ: Yes.

Subsequent to this interchange, defense counsel moved for a mistrial and the motion was denied. The basis for defendant's motion was that the testimony concerning the alias tainted the defendant in the eyes of the jury by indicating that he had been arrested by the police and had a police record. Defense also complains that the information regarding the use of an alias was not given to defense counsel prior to the hearing. The defendant does not here raise the question of the propriety of the trial court's denial of the motion for mistrial, and it is not necessary to rule on the court's action. This court finds no prejudicial error in the court's allowing the examination of the defendant regarding his use of an alias.

At the trial, the defendant raised the issue of duress as his defense to the charge. This placed his credibility squarely before the jury for its determination as to the validity of the defense. It has been held consistently that the examination of a defendant concerning his use of an alias is proper on cross-examination particularly if the examination was not excessive or in bad faith. *People v. Pace*, 98 Mich. App. 714, 296 N.W.2d 345 (1980), *Finchum v. Vogel*, 194 So.2d 49 (Fla. Dist. Ct. App. 1967), *Bland v. State*, 42 Ala. App. 392, 166 So.2d 728 (1964).

Examination of the record indicates that the defendant was arrested on June 22, 1980. The defendant testified that he left Hawaii shortly after this incident for Alaska and California in order to obtain employment. He also indicated that at no time did he have any information that the police were looking for him. The fact that

he used an alias at the time of his arrest was material and relevant for the purpose of testing his credibility not only as to any explanation of his actions after the incident, but also as to his defense of duress. The question was asked only once. The ensuing questions were an attempt by the prosecutor to get the defendant to indicate when he had used the alias. He finally admitted that it was in June, 1980 which, of course, was at the time of his arrest. No attempt was ever made by the prosecutor to emphasize the defendant's alias or to show that this indicated a prior criminal record. As a matter of fact, the prosecutor asked the defendant if that was the first time he had ever used that name and the defendant answered yes.

## III.

The defendant assigns as error the action of the trial judge in allowing the witness, William Scanlan, to testify as to an oral statement made to the witness by the defendant, shortly after the incident. Defendant argues that in not providing him with the substance of that oral statement prior to trial, the government had violated Rule 16(b)(1)(ii), HRPP (1977).

In response to defendant's request for disclosure under Rule 16, the government had provided defendant with the names of the witnesses to be called at trial together with their statements. The statement of William Scanlan did not reveal this oral statement complained of by the defendant. Defendant relies on subparagraph (ii) which states that any written or recorded statements and the *substance of any oral statements*[3] made by the defendant are discover-

---

[3] It is difficult to determine just what is meant by "substance of any oral statements" and in *State v. Rapozo, infra,* this court raised the question whether, as in the case at bar, the substance of any oral statements made by defendant to a prosecution witness is discoverable. It appears from examination of the Commentary to the ABA *Standards of Discovery and Procedure* and the Commentary to the proposed Hawaii Rules of Penal Procedure that a broad meaning was intended. Here, again, as in *Rapozo,* we do not find it necessary to determine that precise question. However, it should be noted that, while courts may have difficulty determining the issue, there does not appear to be any real reason why, as a matter of prosecutorial practice, the prosecutor should not make such statements known to defendant, as soon as discovered. Such practice would avoid surprise and trial delay. At oral argument, the deputy prosecutor conceded that such statements are probably discoverable or, at least, *should be* disclosed.

able from the prosecution. Defendant contends that he was surprised by the testimony of Scanlan and this deprived him of adequate cross-examination of the witness. Defendant also argues that the failure to disclose constituted denial of due process.

The case of *State v. Rapozo*, 2 Haw. App. 587, 637 P.2d 786 (1981), is similar to the case at bar. This court determined that it was not an abuse of discretion for the trial court to deny defendant's motion for a mistrial made after the State's witness testified to occurrences and statements which were not revealed in his written statement to the police, when the sole justification for the motion was the prosecutor's violation of Rule 16. The witness' statement had been given to defense counsel pursuant to pretrial discovery procedures and defense counsel was not aware that the witness would testify to any matters other than those contained in the statement.

Earlier, in *State v. Sugimoto*, 62 Haw. 259 at 262, 614 P.2d 386 (1980), the Hawaii Supreme Court held that a violation of Rule 16 by the prosecuting attorney in failing to notify defense counsel that co-defendants would testify at trial did not warrant an immediate declaration of mistrial by the trial court. The court points out that under Rule 16(e)(8)(i) the trial court may order such discovery, grant a continuance, or enter such other order that it deems just under the circumstances. The Supreme Court examined the procedure used by the trial court and found that the court had acted properly in accordance with Rule 16.

In the case at bar, defendant did not request a mistrial and the trial court did not take steps to mitigate the results of the prosecution's action. Nevertheless, in view of the total record and evidence in this case, we do not feel that the court below abused its discretion in allowing the evidence to be admitted and if it was error, it was harmless. Rule 52(a), HRPP (1977). Pretrial discovery in favor of defendants in criminal cases is not required by due process, but is designed to ascertain truth. 23 AM.JUR.2d 721, *Depositions and Discovery*, § 312 (1965). Since the right of discovery provided by Rule 16 is not of constitutional proportions, error on the part of the trial court in admitting evidence not previously disclosed by the prosecution is not presumptively prejudicial and we need not consider the question whether, if it was error in this case, it was harmless beyond a reasonable doubt. It is enough that the evidence, apart from that

alleged to have been erroneously allowed, supports the verdict, and we find that it did. *See State v. Pokini,* 57 Haw. 26, 29-30, 548 P.2d 1402 (1976).

IV.

Defendant contends that the instruction given by the court as noted above is erroneous in that once the defense of duress is raised the burden shifts back to the prosecution to prove absence of duress beyond a reasonable doubt. That is not the law. Section 702-231(5), Hawaii Revised Statutes (1979, as amended). *See also State v. Anderson,* 58 Haw. 479, 483-484, 572 P.2d 159, 161 (1977). Furthermore, the record clearly shows that the sentence complained of was added by way of modification to an instruction requested by defense counsel and given as modified by agreement of the parties. At no time did the defendant raise the objection in the lower court. Rule 30(e), HRPP (1977), states emphatically that "no party may assign as error the giving or the refusal to give, or the modification of, an instruction , . . . unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Since the instruction was not prejudicial to the defendant and the defendant made no objection, he cannot now raise the question on appeal. *State v. Onishi,* 59 Haw. 384, 581 P.2d 763 (1978); *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978).

We affirm.

*Hayden F. Burgess (Burgess & Matsuura* of counsel) for defendant-appellant.

*Arthur E. Ross (Josie T. Bayudan* on the brief), Deputy Prosecuting Attorneys, City and County of Honolulu, for plaintiff-appellee.