144 P.3d 590

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Brandon CHIN, Defendant–Appellant.**

**No. 27379.**

Intermediate Court of Appeals of Hawai'i.

July 5, 2006.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Daniel H. Shimizu, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE AND LIM, JJ.

Opinion of the Court by LIM, J.

Brandon Chin (Defendant or Brandon) appeals the June 1, 2005 judgment of the Circuit Court of the First Circuit (circuit court) [1] that convicted him of burglary in the first degree.[2] We affirm. Along the way, we hold that the material element of unlawful entry does not always require proof that the title owner of the property did not give the defendant permission to enter.

## I. Background.

The complaining witness, Charles Hartman, a State deputy sheriff (Sheriff Hartman), told the jury that on October 29, 2004, at about 11:30 at night, he returned to his residence to find the front gate and front door ajar. Gift boxes of liquor usually kept in the kitchen were propped against the front door, keeping it from swinging wide open. Also, a floor-to-ceiling window at the front of the house had its screen and the glass louvers from its bottom half removed.

Sidearm to hand, Sheriff Hartman entered the house. He found Defendant crouched at the bottom of a staircase. Sheriff Hartman drew down on Defendant and asked him what he was doing. Defendant responded, "sorry." Sheriff Hartman asked him "who he was," and Defendant answered, "Brandon." Sheriff Hartman then handcuffed Defendant and called the police. A search of Defendant's pockets revealed various and sundry items belonging to Sheriff Hartman or his aunt, the title owner of the property. Sheriff Hartman confirmed that he did not

---

1. The Honorable Dexter D. Del Rosario presided.

2. Hawaii Revised Statutes (HRS) § 708–810(1)(c) (1993) reads:

 (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:

 . . . .

(c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

HRS § 708–800 (1993) provides: "A person 'enters or remains unlawfully' in or upon premises when the person is not licensed, invited, or otherwise privileged to do so." HRS § 708–800 defines "dwelling" as "a building which is used or usually used by a person for lodging."

give Defendant permission to enter the residence.

At the main police station cellblock, Detective Terry Leach (Detective Leach) took two Mirandized statements from Defendant, the first at 12:31 that night and the second at 4:19 the following afternoon.

In the first, Defendant explained that "somebody" told him the house was abandoned because the people who lived there had died. Homeless and hungry at the time, Defendant climbed through a jalousie window that stood open and dismantled, and went into the house just to "check it out" and "to see if there are any things of value." Inside, the house looked abandoned—it was "all messy and everything was thrown on the ground." Defendant claimed that he did not know what he was going to do with any items of value he might find in the house, including the liquor next to the front door and the items later found in his pocket. "I'm not sure, I think I would have left them there and have somebody else take a look." Detective Leach asked Defendant, "You don't have a right to be in there, right? Nobody gave you permission to go inside, right?" Defendant replied, "Right."

In his second statement, Defendant again told Detective Leach that someone informed him the house was abandoned because its former occupants had died. This time, Defendant identified that "someone" as Tammy, "just somebody that I met. You know, I mean, like, I don't really know this person[.]" Defendant also mentioned that he first climbed onto the roof of the house, then clambered down from the roof onto a wall in front of the house and went into the house through an open window. About the items later found in his pockets, Defendant explained, "Because those items I thought I could use to, you know, sell to get something to eat. I just, you know, was trying to get something to eat." Detective Leach asked Defendant, "But you know when you went inside that was wrong, right?" Defendant answered, "Yes."

## II. Discussion.

### A.

On appeal, Defendant brings two related points of error, both of which center around one testimonial exchange. During his initial cross-examination of Sheriff Hartman, defense counsel elicited the following:

Q. Okay. All right. Now, your aunt that you mention, that's Kaiulani Char?

A. Kaiulani.

Q. Kaiulani. That house, 3775 Poka Place, that's owned by her; is that correct?

A. Yes, it is.

Q. She's the owner of the house?

A. Yeah, it's her name on the title, yeah.

Q. And your name isn't on the title of this house, right?

A. No, I just have permission to live there. I keep 90 percent of my possessions there.

[DEFENSE COUNSEL]: Your Honor, move to strike hearsay. May we approach at this time?

THE COURT: Approach the bench.

[DEFENSE COUNSEL]: Yes, Your Honor.

(The following proceedings were
held at the bench:)

[DEFENSE COUNSEL]: Your Honor, defense is requesting that any statements made by this witness to say that he has use of the house, he gave no permission to my client to go into the house, we're asking that that be stricken because he is not the owner of the house.

And we're submitting that it's based on hearsay that he's saying that he has permission to use the house and that there is no foundation for that because it's based on hearsay testimony. And any testimony that Brandon has no permission to enter the property based on this witness, Mr. Hartman, saying that should be excluded as hearsay.

[DEPUTY PROSECUTING ATTORNEY (DPA)]: Totally ridiculous argument. Okay, I don't know how to respond to that other than, hearsay, it doesn't come into play here. Mr Hartman had been given permission to live there since he was 18 and he's been living there. I think it's

just plain and simple and clear that he's been authorized to reside in that residence, especially based on his testimony that his aunt comes over once and a while to check-out her stuff.

I don't think he has to be the owner either, like on title, he can be an authorized occupant. It's similar to a UCPV, you don't have to be the owner of the car, you can be using it, use it to have authority to drive it and give permission to others to use it.

[DEFENSE COUNSEL]: Well, Your Honor, it's just that basically he's saying that he has permission in the house as well. But then he's saying it's based on hearsay testimony that the owner who is his aunty had given him permission, excluding everybody else. So I would argue that that is hearsay.

THE COURT: Ready to rule. Objection overruled. The motion to strike is denied.

[DEFENSE COUNSEL]: Okay.

(Bench conference concluded.)

Before trial continued the next morning, defense counsel revisited the issue:

[DEFENSE COUNSEL]: . . . .

Your Honor, yesterday the defense made a hearsay objection as to Mr. Hartman saying that he had permission from his auntie to reside in the residence at 3775 Poka Place and that we objected as that being hearsay. And so we ask the Court to clarify the Court's decision in overruling the defense's objection for the record.

THE COURT: The statement that he had his aunt's permission to live there is an explanation of why he had 90 percent of his property there, why he was present, why he had his car there, why it was his dwelling, why he was living there, so I did not see it as hearsay, I saw it as an explanation of his presence and use of the home. So I didn't see it as an out-of-court statement of his auntie, rather it was a statement explaining as to why he was there at the residence and using the residence. He was using the residence as a dwelling because had the permission of his aunt. So I did not see it as hearsay.

[DEFENSE COUNSEL]: Very well, Your Honor.

THE COURT: Okay. Mr. [DPA], did you want to add anything to that for the record?

[DPA]: No, Your Honor, I believe that's more than sufficient.

[DEFENSE COUNSEL]: Thank you, Your Honor.

THE COURT: Anything further?

[DEFENSE COUNSEL]: Nothing further, Your Honor.

### B.

■ Defendant first contends the circuit court erred in not giving the jury a limiting instruction against considering Sheriff Hartman's statement—that his aunt gave him permission to reside at the house—for the truth of the matter asserted: "The circuit court erred in failing to instruct the jury that it could only consider Hartman's testimony that his aunt had given him permission to use the property for a limited purpose; to explain his use of and presence at the property." Opening Brief at 6 (bolding and enumeration omitted; format modified). Defendant explains:

Based on its ruling overruling the defense's objection to Hartman's hearsay testimony and pursuant to HRE Rule 105,[3] the court should have immediately cautioned the jury that the testimony was admissible only to explain Hartman's use and presence in the building. The jury should have been instructed that it could not consider the evidence as substantive evidence that Hartman did in fact have the permission of the authorized owner to use the building because his statement was not admitted for the truth of the matter as-

---

**3.** Hawaii Rules of Evidence Rule 105 (1993) provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

serted, but to explain his "use and presence in the home."

. . . .

Due to the court's failure to properly instruct the jury, the jury considered Hartman's testimony substantively, as proof that he was in fact a licensee or invitee of the true owner of the property (his aunt), and thereby had the authority to deny Mr. Chin permission to enter the building. As lack of permission of the *owner of the property* is a required element in a burglary conviction, this error was not harmless. Accordingly, Mr. Chin's conviction must be vacated and his case remanded for a new trial.

Opening Brief at 13–14 (citations omitted; footnote supplied; emphasis in the original).

For his second point of error on appeal, Defendant builds upon his first point to go beyond vacatur to plead reversal:

Although Hartman testified that he had his aunt's permission to stay on the property, and thereby presumably permission to deny Mr. Chin entry, the court admitted this testimony only to explain his use and presence in the building, and not for the truth of the matter asserted.

. . . .

It was a required element for a burglary conviction that the State prove that Mr. Chin did not have the permission of the owner of the property to enter the building. *State v. Okumura*, 78 Hawai'i 383, 894 P.2d 80 (1995). As Hartman's testimony that his aunt had given him permission to use the property was admitted only to explain his "presence and use" of the building, there was no substantive evidence to prove this element. Accordingly, Mr. Hartman's [sic] conviction must be reversed.

Opening Brief at 9–10.

### C.

The implicit linchpin of both points of error is Defendant's assertion that *Okumura* requires the State to show, by direct evidence, that a defendant lacked permission from, specifically, the title owner of the property, in order to prove that the defendant "en-

ter[ed] or remain[ed] unlawfully in a building," Hawaii Revised Statutes (HRS) § 708–810(1) (1993), a material element of burglary in the first degree. This assertion is incorrect.

*Okumura* does not require the State to prove that the title owner of the property did not give the defendant permission to enter. On the contrary, *Okumura* plainly states, in consonance with the plain language of the statute:

HRS § 708–800 (Supp.1992) further states in pertinent part that "[a] person 'enters or remains unlawfully' in or upon premises when he [or she] is not licensed, invited, or otherwise privileged to do so." Thus, in order to convict Okumura of the Ihara burglary, the prosecution was required to prove that Okumura lacked permission to enter.

*Okumura*, 78 Hawai'i at 402, 894 P.2d at 99 (brackets in the original).

Admittedly, *Okumura* mentions elsewhere "permission from the Iharas." *Id.* at 404, 894 P.2d at 101. But in *Okumura*, the Iharas were the occupants as well as the owners of the property, and the reference was not made to support Defendant's averment about the source of the permission, but in aid of the holding that unlawful entry may be proved by circumstantial evidence, and needs not direct evidence:

Although there was no direct evidence that Okumura did not have permission to enter, in light of the evidence of the surreptitious manner in which Okumura approached, entered, and left the Ihara residence and the testimony that the burglary was planned in advance, a reasonable mind could infer that Okumura did not in fact have permission from the Iharas.

*Id.* at 403–04, 894 P.2d at 100–01 (footnote omitted)

### D.

 *Okumura* thus clarified, we return to Defendant's first point of error. In this connection, we note that Defendant did not propose or request a limiting instruction, nor object to the instructions given to the jury. Thus, Defendant's first point is a point of

plain error. From this perspective,[4] we observe that Defendant admitted in his statements to Detective Leach that he had neither right nor permission to enter the residence, and that he was wrong when he did so. We also note the surreptitious route he took into the residence. *Cf. Okumura,* 78 Hawai'i at 403–04, 894 P.2d at 100–01.

Hence, even assuming, *arguendo,* that Defendant's characterization of the circuit court's evidentiary ruling is correct, and that it was thus error to omit a limiting instruction, we do not believe that Defendant's substantial rights were undermined, and we are therefore not inclined to notice plain error. Hawai'i Rules of Penal Procedure (HRPP) Rule 52(a) (2005) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); HRPP Rule 30(f) (2005) ("No party may assign as error the giving or the refusal to give, or the modification of, an instruction, . . . unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."); *State v. Corpuz,* 3 Haw.App. 206, 216, 646 P.2d 976, 983 (App.1982) (citing the predecessor rule to HRPP Rule 30(f)—"Rule 30(e), HRPP (1977)," then holding that "[s]ince the instruction was not prejudicial to the defendant and the defendant made no objection, he cannot now raise the question on appeal. *State v. Onishi,* 59 Haw. 384, 581 P.2d 763

(1978); *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978)"). Even without the aid of the plain error doctrine, we would conclude by the same tokens that the error, if error there was, was harmless beyond a reasonable doubt. *See State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917 (1995) (applying the harmless-beyond-a-reasonable-doubt standard).

### E.

 By the same tokens again, and with the aid of *Okumura* as above clarified, we reject Defendant's second point of error. Defendant's own words and actions betrayed his lack of permission to enter the house, *Okumura,* 78 Hawai'i at 403–04, 894 P.2d at 100–01, and they comprised substantial evidence to support the unlawful entry element of his conviction. *See State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996).

### III. Conclusion.

Accordingly, the June 1, 2005 judgment of the circuit court is affirmed.

---

4. Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (2005) provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Obversely, HRPP Rule 52(a) (2005) provides, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Specifically, HRPP Rule 30(f) (2005) provides, in pertinent part, "No party may assign as error the giving or the refusal to give, or the modification of, an instruction, . . . unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." *See also State v. Corpuz,* 3 Haw.App. 206, 216, 646 P.2d 976, 983 (App.1982) (citing the predecessor rule to HRPP Rule 30(f)—"Rule 30(e), HRPP (1977)," then holding that "[s]ince the instruction was not prejudicial to the defendant and the defendant made no objection, he cannot now raise the question on appeal. *State v. Onishi,* 59 Haw. 384, 581

P.2d 763 (1978); *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978)").

"The general rule is that a reviewing court will not consider issues not raised before the trial court." *Corpuz,* 3 Haw.App. at 211, 646 P.2d at 980. "This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993) (citation omitted). "This court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (brackets, citation and internal quotation marks omitted).