STATE OF HAWAII, Plaintiff-Appellee, *v.* RANDALL J. KRAUSE, Defendant-Appellant

NO. 7645

CRIMINAL NO. 5198-01

MAY 17, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* Defendant-appellant Randall J. Krause (hereinafter "appellant") seeks a reversal of his jury conviction of murder under HRS § 707-701 (1976). He contends that his conviction was based upon inadmissible evidence because after he was indicted, arrested and held in custody, the government violated his constitutional right to assistance of counsel[1] when it used a fellow inmate informant as a government agent to secure incriminating information against him. Finding no constitutional violation and no merit to his other contentions, we affirm.

---

[1] Sixth amendment, United States Constitution, and art. I, § 14, Hawaii State Constitution.

On August 28, 1977, Ann Craddock was reported missing on Maui. A search for Craddock went on for several months but was unsuccessful. The police learned of information tending to connect appellant with Craddock's disappearance. On March 10, 1978, appellant was indicted for murder. Appellant was arrested by the FBI in Anchorage, Alaska, on March 20, 1978 and was placed in a jail in Anchorage.

Appellant was housed in a dormitory with about thirty other inmates, one of whom was Larry Wayne. It was there that appellant and Wayne engaged in a series of conversations about the death of Craddock. Appellant's incriminating statements prompted Wayne to ask a jail officer to make arrangements for him to speak to someone about the murder. Wayne was thereafter referred to Special Agent Grant Slack of the FBI. Wayne then reported much of the conversations to Slack. Since another agent was in charge of the case, Slack told Wayne that someone would later get in touch with him, but if he could find out more, he (Slack) would appreciate it.

A day after Wayne's meeting with Slack, appellant showed Wayne a map he had drawn and indicated an area where Craddock's body might be buried. Later that day, Wayne was removed from the dormitory and interviewed by Agent Slack and Agent James Hill, the person in charge of the case. The information regarding the location of the body was given to law enforcement officials in Hawaii and led to the discovery of Craddock's body. At the trial, Wayne testified to incriminating statements, including a confession, made to him by appellant.

The issue facing us is whether the admission of Wayne's testimony as to appellant's incriminating statements violated appellant's right to assistance of counsel.[2]

The United States Supreme Court first applied the sixth amendment to postindictment communications between the accused and government agents in *Massiah v. United States*, 377 U.S.

---

[2] Appellant asserted the sixth amendment argument for the first time on appeal. Failure to object before or during trial may result in waiver of the objection. Territory v. Young, 32 Haw. 628 (1933); HRS § 641-16 (1976 & Supp. 1981). However, where fundamental constitutional rights are involved, this court will take cognizance of the issue though it is raised in this court for the first time. *See* State v. Martin, 62 Haw. 364, 373, 616 P.2d 193, 199 (1980); State v. Bunn, 50 Haw. 351, 355, 440 P.2d 528, 532 (1968); State v. Yoshino, 50 Haw. 287, 290, 439 P.2d 666, 668 (1968).

201 (1964). After the defendant in *Massiah* had been charged, he made incriminating statements to his codefendant, who was acting as a government agent. The Court reversed the conviction and held that the accused was denied "the basic protections of [the sixth amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Id.* at 206.

The rule established in *Massiah* was recently examined in *United States v. Henry,* 447 U.S. 264 (1980). There, after the defendant had been charged and while he was in jail pending trial, government agents contacted an informant who was then an inmate confined to the same cellblock. An agent told the informant to be alert to any statements made by federal prisoners, but not to initiate any conversations with or question the defendant regarding the charges against him. The informant testified at the defendant's trial as to incriminating statements that the defendant had made to him. In holding that the government violated the defendant's sixth amendment right to counsel, the Court viewed three factors as important in their determination that a government agent "deliberately elicited" incriminating statements from Henry within the meaning of *Massiah:*

> First, Nichols was acting under instructions as a paid informant for the Government; second, Nichols was ostensibly no more than a fellow inmate of Henry; and third, Henry was in custody and under indictment at the time he was engaged in conversation by Nichols.

*Id.* at 270.

The existence of a violation of appellant's right to the assistance of counsel is dependent on our determination of whether Wayne's relationship to the FBI agents brings him within the purview of *Massiah* and *Henry.*[3] Since the rule of *Massiah* serves the purpose of preventing police interference with the relationship between a suspect and his counsel once formal proceedings have begun, *United States v. Henry, supra* at 276 (Powell, J., concurring); *United States v.*

---

[3] The basic contours of the right to the assistance of counsel, including the Massiah principle, are identical in state and federal contexts. Brewer v. Williams, 430 U.S. 387, 398 (1976); Gideon v. Wainwright, 372 U.S. 335 (1962).

*Ash,* 413 U.S. 300, 312 (1973), the sixth amendment right to assistance of counsel is not violated in the absence of any governmental effort to elicit incriminating statements from the suspect. *United States v. Henry, supra* at 276 (Powell, J., concurring); *United States v. Hearst,* 563 F.2d 1331, 1348 (9th Cir. 1977), *cert. denied,* 435 U.S. 1000 (1978). Thus, unless Wayne was a government agent, his conduct in jail did not constitute governmental action.

The co-defendant in *Massiah* acted as á government agent because he decided to cooperate with the government in their investigation of the defendant and permitted an agent to install a radio transmitter in his automobile.

The court in *Henry* found that the facts supported the Court of Appeals's determination that Nichols deliberately used his position to secure incriminating information and that his conduct was attributable to the government. These facts were as follows: (1) Nichols had been a paid government informant for over a year; (2) the government agent knew Nichols had access to Henry; and (3) the arrangement between Nichols and the agent was on a contingent-fee basis, whereby he was paid if he produced useful information.

Similar incriminating testimony by another of Henry's cellmates who was not a paid informer and had no arrangement to monitor or report on conversations with Henry was admitted at trial. *United States v. Henry, supra* at 267 n.3, 274 n.13. The Court's failure to find a constitutional violation from this fact has been interpreted as an implicit approval of the admission of such testimony. *United States v. Calder,* 641 F.2d 76, 79 (2d Cir. 1980), *cert. denied,* 451 U.S. 912 (1981).

In cases subsequent to *Henry,* courts have found no agency relationship between an informant and the government where the informant was not promised pecuniary gain or freedom for obtaining and giving information and was not acting pursuant to government instruction. *See United States v. Calder, supra* at 79; *State v. Schad,* ____ Ariz. ____, 633 P.2d 366, 374-75 (1981); *Barfield v. State,* 402 So.2d 377, 381 (Fla. 1981). On the other hand, where the informant is paid or his freedom is dependent upon his performance as an informer, he has been found to be a government agent. *See United States v. Sampol,* 636 F.2d 621, 638 (D.C. Cir. 1980); *State v. LePage,* 630 P.2d 674, 679 (Idaho 1981).

In the instant case, Wayne had never previously been an infor-

mant for the government. Appellant initiated the conversations with Wayne about the murder; he discussed being extradicted to Maui. Before any of Wayne's contacts with law enforcement officials, Wayne had become a confidant of appellant and knew the details of the murder, except the location of the body. When Wayne spoke to Agent Slack, the agent did not know anything about the case but recognized that the case was being handled by Special Agent James Hill. Slack gave him no instructions to follow, aside from telling him that if he could find out anything, the agent would appreciate knowing. Although Slack told Wayne that someone would get in touch with him, he did not promise Wayne anything if Wayne obtained and gave him information. Under these circumstances, we are of the opinion that Wayne was not a government agent when he spoke to appellant in jail.

Appellant argues that Wayne was a government agent because he was motivated by the opportunity of gaining his freedom and agreed with law enforcement officials to testify at appellant's trial in exchange for his freedom.

Although Wayne considered the possibility of FBI assistance with his lawsuit when he asked to speak to someone about appellant, he testified that he started thinking about his own son, "actually got to caring about what happened to the girl," and "wasn't that interested in his own case." Even if Wayne was motivated by self-seeking purposes, his actions would not constitute a violation of the sixth amendment where .the informant was not instructed by the police or not promised something of value for the information. *State v. Olson,* 274 N.W.2d 190 (N.D. 1978).

There is conflicting evidence as to the existence of an agreement between Wayne and government officials to dismiss his case on the condition that Wayne testify at appellant's trial. Such an agreement is irrelevant to the presence of an agency relationship at the time appellant made statements to Wayne. The informant in *Henry* was acting by prearrangement as a government agent, and consequently was a government agent at the time the statements were elicited. In the instant case, the agreement, if it existed at all, was made after the informant had the information, and the informant was to receive his freedom for testifying instead of eliciting information. On the basis of this agreement, we could not hold Wayne's conduct in jail attributable to the government.

We hold that the incriminating statements were not "deliberately elicited" within the meaning of *Massiah,* and thus the government did not violate appellant's sixth amendment right to assistance of counsel.

Affirmed.

*David C. Schutter (Judith Ann Pavey* with him on opening brief and *Howard Glickstein* with him on reply brief, *David C. Schutter,* Attorney at Law, a Law Corporation, of counsel) for defendant-appellant.

*Boyd P. Mossman,* Prosecuting Attorney, County of Maui *(Artemio C. Baxa,* Deputy Prosecuting Attorney, with him on the brief) for plaintiff-appellee.