STATE OF HAWAII, Plaintiff-Appellee, *v.* ALAN DALE ARNOLD, Defendant-Appellant

NO. 8242

(CRIMINAL NO. 5198-02)

FEBRUARY 3, 1983

LUM, ACTING C.J., NAKAMURA, PADGETT, HAYASHI, JJ.,
AND CIRCUIT JUDGE CHANG
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY LUM, J.

Defendant-appellant Alan Dale Arnold appeals his jury conviction of manslaughter. Appellant's primary contention on appeal is that he was denied his right to a fair trial because of the state's failure to produce a specific letter which appellant alleges would have been favorable to his case. Upon review of the evidence in the record, we conclude that the prosecution's failure to produce the document at issue does not warrant reversal. Having also determined that appellant's other contention on appeal has no merit, we accordingly affirm the judgment of the trial court.

I.

On August 28, 1977, Ann Craddock was reported missing on Maui. On the night of August 26, 1977, Craddock had arranged to meet with Randall Krause, a former boyfriend who owed her $400.00. She never returned to her apartment. An extensive search for Craddock was conducted by both law enforcement authorities and civilian volunteers.

On March 10, 1978, the grand jury returned an indictment against appellant and co-defendant Randall Krause for the murder of Ann Craddock. At the time the indictment was rendered, Craddock's body still had not been recovered. Arrest warrants were issued and appellant and Krause were apprehended soon thereafter.

While awaiting extradition to Hawaii, Krause was placed in a jail in Anchorage, Alaska, where Larry Wayne was also an inmate. Krause made a series of incriminating statements to Wayne about Craddock's murder. Wayne reported these conversations to law enforcement authorities. Eventually Krause showed Wayne a map of the area on Maui where Craddock's body might be buried. Wayne reproduced a rough sketch of the map which was forwarded to authorities in Hawaii. On March

24, 1978, the police on Maui, with the aid of the information given by Wayne, eventually discovered Craddock's body.

After considering the evidence at trial, the jury convicted appellant of the lesser-included offense of manslaughter.[1]

## II.

Appellant's initial contention on appeal is that the trial court erred in denying his requested instruction on hindering prosecution. After careful review of the record, we conclude that this contention has no merit.

Appellant's primary contention on appeal is that the trial court erred in refusing to order the production of a letter by Maui prosecutor Boyd Mossman to the prosecutor's office in Anchorage which requested that embezzlement charges against Wayne be dismissed on the grounds of insufficiency of evidence. Wayne had been awaiting trial on felony charges of embezzlement stemming from his alleged theft of insulation material, when he first met Krause in the Anchorage jail. At trial, appellant attempted to impeach Wayne's credibility by showing that his testimony had been obtained by the prosecution in exchange for a promise by authorities in Anchorage to dismiss the embezzlement charges.

The existence of Mossman's letter was revealed by Alaska State Trooper Samuel Bernard who had testified in camera that he had seen the letter, while examining the prosecution's files in the case brought by the state of Alaska against Wayne for embezzlement. The trial court had previously denied appellant's motion for the state to produce all correspondence between Mr. Mossman and the Alaska authorities regarding any deals made with Wayne. After Bernard's testimony, appellant renewed his motion for production of the letter which the court again denied.

---

[1] In a separate jury trial, co-defendant Randall Krause was convicted of murder. We affirmed his conviction on appeal in State v. Krause, 64 Haw. 522, 644 P.2d 964 (1982).

Appellant contends that the trial court violated the precepts of *Brady v. Maryland,* 373 U.S. 83 (1963), in refusing to order the production of the letter written by prosecutor Mossman. Appellant refers to the Supreme Court's holding in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. *See also, United States v. Agurs,* 427 U.S. 97 (1976); *Giles v. Maryland,* 386 U.S. 66 (1967).

The defendant in *Brady* had been tried, convicted and sentenced for murder in the first degree. It was only until after his sentencing that defendant learned that the prosecution had withheld a statement made by defendant's accomplice in which he confessed to committing the actual homicide. The Court after reviewing this evidence held that the accomplice's confession was material on the issue of defendant's punishment, although not on the issue of defendant's guilt, and affirmed the Maryland Court of Appeals' order which granted a new trial on the issue of punishment.

In *Giglio v. United States,* 405 U.S. 150 (1972), decided after *Brady,* the Supreme Court specifically addressed the situation where the prosecution had failed to disclose a promise of leniency made to a key prosecution witness in return for his testimony at trial. The Court noted in *Giglio* that the credibility of the prosecution witness was a material issue since the government's case depended almost entirely on the testimony of its key witness. *Id.* at 155. The Court accordingly reversed defendant's conviction for passing forged money orders on the basis of the government's failure to disclose the promise of leniency made to its key witness. But at the same time, the Court also cautioned that

> We do not, however, automatically require a new trial whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . ." A finding of materiality of the evidence is required under *Brady, supra,* at 87. A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ."

*Id.* at 154 (citations omitted). *See also Napue v. Illinois,* 360 U.S. 264 (1959).

The above cases are distinguishable from the instant case on the grounds that the specific letter at issue here, even if it had been produced, would not have had a material effect on the outcome of the trial. Sufficient evidence of the dismissal of charges against Wayne was produced at trial for the jury to evaluate Wayne's credibility without the aid of the letter.

Defense counsel extensively cross-examined several witnesses in the presence of the jury about the existence of any deals made with Wayne in exchange for his testimony. Howard Slack, a special agent with the Federal Bureau of Investigation to whom Wayne was initially referred, testified that he had informed Wayne that if his information proved accurate, the prosecutors who were in charge of his embezzlement case would be given this information. James D. Hill, an FBI special agent who was later assigned to the case, testified that he informed Wayne that his cooperation would be made known to the proper authorities. Alaska State Trooper Samuel Bernard, the investigator in charge of Wayne's embezzlement case, testified that he was informed by Hill that Wayne was providing useful information in the Hawaii murder case. Bernard further testified that he told Hill that in return for Wayne's testimony in the murder trial, the embezzlement case against Wayne would be dismissed.

Appellant also introduced into evidence an affidavit by Assistant District Attorney William D. Cook of the Anchorage, Alaska District Attorney's Office in support of a motion for a bench warrant for Wayne's arrest. In the affidavit, Cook states that he was advised by District Attorney Joseph Balfe that in accordance with an agreement between Wayne's attorney and the District Attorney's Office, Wayne's embezzlement case would be dismissed after Wayne had testified in the Hawaii murder case. Defense counsel showed Wayne the affidavit on cross-examination and Wayne admitted seeing the document, but only after his case had already been dismissed.

In light of the substantial evidence produced at trial regarding the dismissal of charges against Wayne in return for his testimony, the letter from prosecutor Mossman to Alaska

authorities suggesting that embezzlement charges against Wayne be dropped would have been merely cumulative. The purpose for which the letter would have been introduced had been adequately proven by other evidence.

Moreover, unlike the government's case in *Giglio,* the prosecution's case here did not rest solely on Wayne's testimony. Several prosecution witnesses besides Wayne gave damaging testimony about appellant's conduct on the night of the murder and recounted incriminating statements appellant had made showing that he had been aware of Craddock's murder and had personally been involved in secreting her body.

Wayne was called as a witness by the prosecution for the limited purpose of testifying about the map that Krause had shown Wayne indicating where Craddock might be buried. Wayne reproduced a rough sketch of the drawing Krause had shown him on redirect examination. The prosecution carefully refrained from asking Wayne about the substance of the conversation that Wayne had with Krause and with the law enforcement authorities.

The specifics of Wayne's conversation with Krause were brought out by defense counsel on cross-examination, not by the prosecution. Under questioning by defense counsel, Wayne testified that from what Krause had told him, Wayne had surmised that Craddock was still alive when Krause picked up appellant and that appellant was approximately ten to fifteen feet from the truck, walking in the opposite direction, when Krause killed Craddock.

Thus, the only statements made by Wayne incriminating appellant were brought out by appellant's own counsel. Even without these incriminating statements, however, the testimony of other witnesses was sufficient to support the jury's verdict of manslaughter. The error which appellant alleges the trial court committed in refusing to order the production of the letter did not affect any substantial rights of the appellant and should therefore be disregarded as harmless. *See* HRPP Rule 52(a). *See also State v. Lui,* 61 Haw. 328, 332-33, 603 P.2d 151, 155 (1979).

We also note that defense counsel, when confronted by the prosecution's refusal to produce the letter at issue, should have requested an in camera inspection of the document by the trial

court pursuant to HRPP Rule 16(e)(6) which provides as follows:

> (6) *In Camera Proceedings.* Upon request of any person, the court may permit any showing of cause for a denial or regulation of disclosures or any portion of such a showing to be made in camera. When some parts of certain material are discoverable under these rules and other parts are not discoverable, as much of the material shall then be disclosed as is consistent with these rules. If the court enters an order granting relief following a showing in camera, the entire record of such a showing, including any material excised pursuant to court order, shall be sealed, impounded and preserved in the records of the court to be made available to the reviewing court in the event of an appeal.

If defense counsel had requested an in camera showing, the entire record of such a showing would have been sealed and preserved for the appellate court on review. As the record now stands, the letter itself is not before this Court and our knowledge of its contents is limited to Bernard's testimony in camera and the prosecutor's oral offer of proof. It would have been a far better procedure for defense counsel to have requested that the document be sealed and preserved for appellate determination of its materiality as to appellant's guilt or punishment under the *Brady* test, rather than to have merely filed a motion for production of the letter. *See also Nakagawa v. Heen,* 58 Haw. 316, 321, 568 P.2d 508, 512 (1977).

Affirmed.

*Arthur Trask, Jr., (Nelson W. S. Goo* on the briefs), Deputy Public Defenders, for defendant-appellant.

*Boyd Mossman,* Prosecuting Attorney, County of Maui, *(Artemio C. Baxa,* Deputy Prosecuting Attorney, on the brief), for plaintiff-appellee.